Jasen, J.
This personal injury action arises out of an accident which occurred on June 25, 1970. The infant plaintiff, Christopher O’Rourke who was then 10 years old, had been illegally* engaged in delivering the Long Island Press newspaper on the afternoon of that day. He had left his home by bicycle and rode along the local streets, carrying newspapers in the rear basket, pausing occasionally to distribute papers to customers’ residences. He had not yet finished delivering the newspapers when he spied an ice cream truck proceeding towards him on the opposite side of the street. After signaling the operator of the truck to stop, he dismounted his bicycle and crossed the street to buy ice cream. Upon returning from the ice cream truck, he was struck by a passing vehicle.
On October 5, 1970, a claim for workmen’s compensation was filed on behalf of the infant plaintiff with the Workmen’s *221 Compensation Board. Shortly thereafter, a check was sent to Christopher by the newspaper’s workmen’s compensation carrier, but was returned to the carrier by his counsel. Plaintiffs, the boy, and his father who sues derivatively, then instituted a plenary action against the newspaper, the owner and operator of the ice cream truck, and the owner and operator of the motor vehicle which struck the infant plaintiff while the motor vehicle was passing the standing ice cream truck. The action against all of the defendants, except the newspaper, was settled during the trial and discontinued. The complaint against the Long Island Press was dismissed by the court at the close of the plaintiffs case upon the ground that there was insufficient proof to establish a causal relationship between his illegal employment and the accident. The Appellate Division affirmed the judgment, without opinion. Two Justices dissented, taking the view that the question of proximate cause should have been presented to the jury. (47 AD2d 950.) We believe that the complaint was properly dismissed, but for different reasons.
We find that it was error for the courts below to have passed upon the merits of the plaintiffs’ tort claim with respect to the defendant Long Island Press. The "defense” raised by the newspaper was that of workmen’s compensation, an argument which questions the right of plaintiff to present a claim, whatever its merit, in court. It is axiomatic that, as to an employer, where workmen’s compensation provides a remedy, the remedy that it provides, save for the rare case, is exclusive. Where liability is imposed upon an employer to provide workmen’s compensation and compensation is provided, that liability is exclusive and in the stead of any other employer liability whatsoever. The initial question to be resolved whenever a defense of workmen’s compensation is presented is whether the plaintiff has a right to bring a plenary action. If the right to sue the employer has been stripped away by workmen’s compensation coverage, it is an arrogation of jurisdiction to consider a tort complaint on its merits. By considering a complaint on its merits, particularly if the plaintiff is permitted to put in favorable proof at a trial, the employer would be subject to fending off liability in a forum from which the Legislature provided a shield. Here, over thrice repeated objections, the employer was put to lengthy and expensive pretrial and trial proceedings before a tribunal that was without authority to impose tort liability.
*222 The Workmen’s Compensation Law evinces a legislative design to require employers to pay workmen’s compensation benefits where employees sustain injuries or meet their death in the course of specified hazardous employments. (Workmen’s Compensation Law, § 3.) Every employer who is subject to the law must "secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of the employment without regard to fault as a cause of the injury, except that there shall be no liability for compensation under this chapter when the injury has been solely occasioned by intoxication of the injured employee while on duty or by wilful intention of the injured employee to bring about the injury or death of himself or another.” (Workmen’s Compensation Law, § 10.) The liability of the employer to provide compensation is the exclusive liability of the employer unless the employer fails to secure the payment of compensation. (Workmen’s Compensation Law, § 11.) Securing the payment of compensation involves the procurement of one of several forms of insurance, or, alternatively, obtaining authorization to rely upon self-insurance. (Workmen’s Compensation Law, § 50.) In the event that payment of compensation is not secured, the employee, or in the case of death his representatives, may nevertheless elect to claim compensation or, at their option, maintain a plenary action in the courts for damages. (Workmen’s Compensation Law, § 11; see, generally, 2A Larsen, Workmen’s Compensation Law, § 67.22.)
It is well recognized that the compensation statute was designed to provide a swift and sure source of benefits to the injured employee or to the dependents of the deceased employee. The price for these secure benefits is the loss of the common-law tort action in which greater benefits might be obtained. Thus, unless the employee can establish the existence of a limited number of exceptional circumstances, the sole remedy is workmen’s compensation.
In this case, the plaintiffs presented and relied upon two arguments to sustain the availability of the tort action: that the infant was not an employee and that the defendant failed to prove that it had secured the payment of compensation. Both contentions raise questions of law which should have been rejected by the courts below.
Ever since January 1, 1962, the work of newspaper carriers has been defined as hazardous employment for which the *223 employer is liable to pay compensation in the event of injury. (Workmen’s Compensation Law, § 3 [Group 21].) The fact that the employment was illegal is not a circumstance which removes the employer or the employee from the scope of the compensation law. (Noreen v Vogel & Bros., 231 NY 317, 322.) Instead, the sanction against illegal employment provided by the Legislature is the imposition of an award twice the amount ordinarily payable. (Workmen’s Compensation Law, § 14-a.)
For purposes of the Workmen’s Compensation Law only, the term employer was statutorily defined to include "a person, partnership, association, corporation, and the legal representatives of a deceased employer, or the receiver or trustee of a person, partnership, association or corporation who delivers or causes to be delivered newspapers or periodicals for delivering or selling and delivering by a newspaper carrier under the age of eighteen years as defined in section thirty-two hundred twenty-eight of the education law.” (Workmen’s Compensation Law, § 2, subd 3.) The term employee was defined to include newspaper carriers under the age of 18 as defined in the Education Law and the term of employment was stated to include the delivery or sale and delivery of newspapers and periodicals as defined in the Education Law. (Workmen’s Compensation Law, § 2, subds 4, 5.) The Education Law states that a newspaper carrier is a minor between the ages of 12 and 18 who "engages in the occupation of delivering or selling and delivering newspapers or periodicals to customers at their homes or places of business.” (Education Law, § 3228, subd 1.)
In their complaint, plaintiffs alleged that the boy was engaged by the defendant Long Island Press as a "newspaper deliverer” and this was admitted by the defendant. The plaintiffs’ argument is that since the boy was underage he was outside the Education Law definition. However, the Legislature in developing the statutory definition had no need to include minors under 12 within the definition since these children were absolutely prohibited from engaging in such employment. Moreover, the plaintiffs overlook section 14-a of the Workmen’s Compensation Law which states that an employer who knowingly permits or suffers a newspaper carrier to work in violation of the Education Law is liable for a double award. It could scarcely be comprehensible that the Legislature would provide for a double award in cases of employer knowledge of illegality, as it did, when, as plaintiffs *224 contend, compensation was not payable at all. In addition, subdivisions 3 and 4 of section 2 of the Workmen’s Compensation Law provide for coverage of newspaper carriers "under the age of eighteen” without mention of the minimum age of 12. The reference to the Education Law definition may appropriately be viewed as a reference to the definition of the occupation rather than an incorporation of the minimum age provision. It is not without significance that the Education Law grants the Industrial Commissioner the authority to enforce the restrictions upon employment of newspaper carriers, with the sole exception of the issuance and revocation of permits. (Education Law, § 3228, subd 7.) Although usually whether a worker is an employee involves a question of fact to be resolved by the Workmen’s Compensation Board (Matter of Gordon v New York Life Ins. Co., 300 NY 652, 654), the determination of the employment status of this plaintiff involves an issue of statutory construction and presents a pure question of law, which in light of conceded facts, should have been resolved at the earliest opportunity by the courts below. The defendant’s objection was that the plaintiffs failed to state a cause of action since the infant plaintiff was its employee and was covered by workmen’s compensation. Thus, the question of employment status determined the validity of the complaint. Even if the statute had been less explicit in making newspaper carriers "employees” and the resolution of the employment issue hinged on the choice of inferences, the courts below still should not have proceeded with the trial of a civil tort action. Instead, the appropriate course would have been to await a conclusive determination by the Workmen’s Compensation Board. (Cf. Matter of Scatola [Bronx Home News Pub. Co.], 257 App Div 471, affd 282 NY 689.)
As a second ground for the maintenance of the action, plaintiffs argue that the defendant failed to produce sufficient proof that it has obtained compensation insurance coverage for newsboys in general and for the plaintiff in particular. If the defendant did not in fact secure its obligation as required by law, plaintiff would have an election between compensation and plenary suit. However, plaintiff did not allege this second and alternate theory for avoiding the application of workmen’s compensation in his complaint. The sole basis for plaintiff’s plenary action was that there was no employment relationship between the infant plaintiff and the defendant Press. This issue, by virtue of statute (Workmen’s Compensation *225 Law, § 2, subds 3, 4, 5), should have been resolved against the plaintiff. Since plaintiff was an employee, the presence or absence of an insurance policy determines the validity of plaintiff’s complaint. An action at common law is not available to plaintiff if it appears from the complaint, expressly or as a matter of law, that he is an employee, unless it is alleged and established that the requisite security was not obtained. (Kuhn v City of New York, 274 NY 118, 128-129; Finch v Swingly, 42 AD2d 1035; Artonio v Hirsch, 3 AD2d 939; Gardner v Shepard Niles Crane & Hoist Corp., 268 App Div 561, 563-564, affd 296 NY 539; 65 NY Jur, Workmen’s Compensation, § 81, p 450.) This the plaintiffs failed to do. The complaint disclosed a state of facts which, in view of both the Education Law and the Workmen’s Compensation Law provisions, was likely to fall within the exclusive jurisdiction of the Workmen’s Compensation Board. Hence, Paulsen v Kahn (248 App Div 744) and Flatau v Fairchild Camera & Instrument Corp. (40 AD2d 990) are distinguishable, even assuming that these cases were correctly decided. In any event, the full record on this appeal supports a conclusion that the defendant did in fact maintain a compensation insurance policy which covered injuries to all newsboys. Moreover, shortly after a claim for workmen’s compensation was filed on behalf of the infant plaintiff with the Workmen’s Compensation Board, the carrier accepted the claim and a check was sent to the plaintiff claimant but was returned to the carrier by his counsel. Thus, it affirmatively appears that defendant complied with the law. (Kuhn v City of New York, supra.) It should be noted that such coverage was mandated and failure to provide it would be a misdemeanor. (Workmen’s Compensation Law, § 52, subd 1.) The presence or absence of insurance coverage for a particular employee is also a question of law for the court to resolve. In future cases the court may order an immediate hearing on any disputed facts necessary for the resolution of this limited issue. (CPLR 3212, subd [c], eff Sept. 1, 1973.)
The case of Dashinsky v Santjer (32 AD2d 382), relied upon by plaintiffs, is also quite distinguishable. In that case, the defense of workmen’s compensation was not pleaded in the answer to the complaint and was not raised until the appeal of plaintiff’s verdict to the Appellate Division. The Appellate Division recognized that the tort plaintiff carries the burden of disproving compensation coverage and refused to permit a *226 defense of workmen’s compensation to be asserted at a time when plaintiff would be unable to produce the proof necessary to sustain the burden. (32 AD2d, at p 385.) To be more precise, however, the cases establish convincingly that workmen’s compensation is not a "defense” to a tort claim. Rather, the unavailability of workmen’s compensation benefits or insurance for compensation benefits is a matter integral to plaintiff’s cause of action, and, as such, must be alleged and proved by the tort plaintiff. (But see Robbins v Master Diesel Corp., 34 AD2d 1021.) The employer, by way of its answer, may assert the inconsistent arguments that there was no "employment” and that such "employment” was covered by compensation insurance. (George v Sparwood Realty Corp., 34 AD2d 768.) Although it may be first asserted in the answer by way of defense, or affirmative defense, the issue of compensation exclusivity is to be pleaded and proved by the plaintiff and the omission of plaintiff to so plead does not work to shift the burden of pleading or proving.
Although not pleaded or argued by the plaintiffs, there is a third theory which would, if accepted, open up a tort action against the employer. Some members of the court are of the view that the injury sustained by the employee, because of the deviation from newspaper delivery, did not occur in the course of employment. If that were the case, workmen’s compensation would not provide a remedy and workmen’s compensation cannot be an exlclusive remedy if it is no remedy at all. (See 65 NY Jur, Workmen’s Compensation, § 77, p 442.) The compensation liability of an employer is exclusive only if the injuries arose out of and in the course of employment. Of course, if the injuries were not sustained in the course of employment, as some in our court would contend, the likelihood of a tort recovery, based upon common-law principles, would be equally tenuous. An injury sustained outside of the course of employment would, in most conceivable situations, lack the necessary common-law connection to the fault of the employer. However, it is possible that, in the close case, the Workmen’s Compensation Board might find one way (negatively) and a jury, if properly given the issue, another (positively). However, in a tort action, it is scarcely within the usual interest of the plaintiff to argue that his injuries were sustained outside the course of his employment. Similarly, the employer is usually all too willing to concede that the injuries were sustained in the course of employment. In that fashion, *227 he may escape all liability at the expense of his compensation carrier. Thus, in this action, defendant in its answer affirmatively alleged that the injuries sustained by the newsboy plaintiff were sustained in the course of employment. The party with the truly significant interest to disclaim course of employment is the compensation carrier. Such an argument would be raised in a proceeding before the Workmen’s Compensation Board and therein lies the reason why, at this stage, we should not express a view as to the course of employment issue.
The existence of an employer-employee relationship in which an industrial accident has occurred is jurisdictionally vital to the maintenance of a workmen’s compensation proceeding. (Matter of Martin v C. A. Prods. Co., 8 NY2d 226, 230.) A decision of the Workmen’s Compensation Board is final on all questions within its jurisdiction, unless reversed or modified on appeal. (Workmen’s Compensation Law, § 23.) With respect to a board determination that a particular injury was or was not sustained in the course of employment, the judicial appellate function is limited. Where the employee was an outside employee, an employee without a fixed place of employment, the board is given an especially wide latitude. (E.g., Matter of Anadio v Ideal Leather Finishers, 32 AD2d 40, 42 [Cooke, J.], mot for Iv to app den 25 NY2d 737; Matter of Gruntler v Home Reader Serv., 19 AD2d 670, 671.) It is the rare case in which board findings are set aside as a matter of law, and even in those rare cases dissenting voices have been heard. (See Matter of Kaplan v Zodiac Watch Co., 20 NY2d 537, 539; Matter of Pasquel v Coverly, 4 NY2d 28; compare Birdsall v Peters, 46 AD2d 11, and Matter of Flynn v News-day, 28 AD2d 1053 [finding of course of employment sustained where newsboys injured in bicycle falls while en route to pick up the newspapers], with Matter of Taber v Abraham, 3 AD2d 776 [finding of course of employment reversed where newsboy went to Little League practice and was injured in a bicycle fall en route from practice to picking up his newspapers].)
In any event, an adjudication by the board that there was a relationship between accident and employment, unless reversed on a direct appeal, would preclude any recovery in a civil action against the employer. (Matter of Coe v House Inside, 29 NY2d 241, 244.) Moreover, the board has the discretion to process a claim for compensation and render a decision, even though the claimant objects and even though a *228 civil action was pending in the courts. (29 NY2d, at p 245.) "It follows, therefore, that a factual determination by the court [in a civil action] with respect to whether the accident was within the scope of plaintiff’s employment would not be binding on the board * * * whereas the board’s determination with respect to this same factual question would be binding on the court provided that an opportunity is afforded to the employer to be heard (Piggot v. Field [13 AD2d 350] [Botein, J.]; Baker v. Matthews [8 AD2d 585]). The mere contention by defendant’s compensation carrier that the accident occurred outside the scope of plaintiff’s employment in no way prejudices plaintiff’s [civil] cause, for this is a matter that must in the first instance be determined by the board, not by the carrier. Nor does the contrary claim of defendant’s liability insurance carrier to the effect that the accident occurred within the scope of * * * employment prejudice the plaintiff, for in the event the board determines that it was in fact outside the scope of employment, an action against the * * * defendant would lie. In either event plaintiff is adequately protected.” (McMillan v Notre Dame Residence Club, 33 Misc 2d 948, 950-951 [Markowitz, J.], emphasis in original; see, generally, Ann., 84 ALR2d 1036.) Indeed, plaintiff would have six months following the dismissal of the compensation claim to commence a plenary tort action. (CPLR 205, subd [c].) However, where the availability of workmen’s compensation hinges upon the resolution of questions of fact or upon mixed questions of fact and law, the plaintiff may not choose the courts as the forum for the resolution of such questions. The Legislature has placed the responsibility for these determinations with the Workmen’s Compensation Board and there it must remain. Thus, it would be inappropriate for us to express our own views as to whether, as a matter of law, workmen’s compensation benefits are available to plaintiff. While the expression of an opinion might be necessary upon an appeal from a board decision in a disputed compensation proceeding, it appears unlikely that the need would arise in this case since the record indicates that the claim has been accepted by the newspaper’s compensation carrier.
Christopher O’Rourke then must be remitted to the remedies available through workmen’s compensation and the tort action against the Long Island Press was, thus, properly dismissed. His earlier rejection of the initial payment proffered by the defendant’s compensation carrier should not be *229 regarded as a conclusive rejection of such benefits. Counsel was seeking to protect what he perceived to be the rights of his client. Of course, should the compensation claim for some reason be conclusively rejected, the plaintiff would, at that stage, possess a tort action against the publisher cognizable in a judicial forum.
One final matter deserves comment. The existence of a compensation insurance policy was made apparent in the course of extensive disclosure proceedings which involved no less than three separate court orders. None of this information was contained in the appendix filed by the appellants. The first motion to dismiss the complaint is reported not in the filed appendix but in an appendix to the appellants’ brief. The arguments advanced on the motion, as well as the arguments advanced on the two similar motions made during the trial, are not presented at all. This information was not presented at oral argument of this appeal either. As a result of the failure of counsel to report facts essential to a proper disposition, the members of the court have been "compelled to disregard [the appendix] and laboriously discover the facts for themselves by reading the entire record. This involves great labor, which * * * might be avoided by a careful observance of the” CPLR requirements. (Stevens v O’Neill, 169 NY 375, 376-377.) The CPLR requires that the appendix, which is prepared by the appellant, contain "only such parts of the record on appeal as are necessary to consider the questions involved, including those parts the appellant reasonably assumes will be relied upon by the respondent”. (CPLR 5528, subd [a], par 5.) Our own rules require that the appendix consist of relevant judicial or administrative opinions and decisions in the case, as well as "so much only of the testimony, affidavits, and written or photographic exhibits as may be useful to the determination of the questions raised on the appeal”. (Rules of Court of Appeals, 22 NYCRR 500.4, as amd eff Jan. 1, 1977.) We find that the appendix presented to us on this appeal was inadequate since the prior judicial determinations within the action and the arguments presented to the courts were not fully reported and the first summary judgment motion was discussed only in an off-hand manner. Moreover, evidence respecting the vital issue of compensation coverage was completely absent. We have had to search the full record of this case ourselves, thereby "multiplying the time necessary for the proper consideration and disposition of *230 the appeal.” (Lo Gerfo v Lo Gerfo, 30 AD2d 156, 158.) Although the fault primarily lies with the appellants, the respondent too has been derelict since its counsel should have desired "to supply the court with all material necessary to convince it to adopt his client’s position.” (E. P. Reynolds, Inc. v Nager Elec. Co., 17 NY2d 51, 56.) Since counsels’ failure to supply an adequate appendix has caused a substantial and avoidable delay in the disposition of this case and in turn delayed the expeditious resolution of the many other appeals on our calendar, we believe it appropriate to withhold costs from both parties. (CPLR 5528, subd [e].) Accordingly, the order of the Appellate Division should be affirmed, without costs.

 Subdivision 5 of section 3228 of the Education Law prohibits minors under the age of 12 from engaging in the occupation of delivering or selling and delivering newspapers.